322

UNITED STATES, Appellee,

v.

William W. SCRANTON, Sergeant, U.S. Air Force, Appellant.

No. 62,991.

ACM 27387.

U.S. Court of Military Appeals.

Argued March 13, 1990.

Decided Aug. 27, 1990.

For Appellant: *Captain Paul M. Dankovich* (argued); *Colonel Richard F. O'Hair* (on brief).

For Appellee: *Captain Leonard R. Rippey* (argued); *Colonel Joe R. Lamport* and *Major Terry M. Petrie* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

During September and November 1988, appellant was tried by a general court-martial composed of members at George Air Force Base, California. Contrary to his pleas, he was found guilty of four specifications of drunken driving and one specification of negligent homicide, in violation of Articles 111 and 134, Uniform Code of Military Justice, 10 USC §§ 911 and 934, respectively. He was sentenced to confinement and forfeiture of $300 pay per month for 18 months and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged. The Court of Military Review affirmed the findings of guilty and the sentence in a short-form opinion dated May 11, 1989.

On September 15, 1989, this Court denied appellant's petition for review which presented his case "on its merits" without

specific assignment of error. On September 28, 1989, we *sua sponte* rescinded the order denying the petition for grant of review (29 MJ 321) and specified the following issue for review:

> WHETHER THE MILITARY JUDGE ERRED BY FAILING TO FIND SPECIFICATIONS 1 THROUGH 4 OF CHARGE I (DRUNK DRIVING CAUSING INJURY) MULTIPLICIOUS WITH EACH OTHER FOR FINDINGS.

We resolve this issue in favor of appellant by consolidating the four drunken-driving specifications and remanding this case to the Court of Military Review for reassessment of sentence. *See United States v. Guerrero*, 28 MJ 223, 227 (CMA 1989). *See generally United States v. Sorrell*, 23 MJ 122 n.1 (CMA 1986).

The facts surrounding the granted issue are not in dispute and were accurately summarized by appellate defense counsel substantially as follows. On Friday, May 6, 1988, George Air Force Base (AFB) was holding an athletic day. Appellant and his fellow airmen participated in the day's events, including a game of softball. He was observed drinking beer during the game. After the game, appellant returned to his barracks and offered to take five fellow airmen "four-wheeling" in his Chevy Blazer in the desert. These persons were Amn Myrick, A1C Isenhart, A1C Anderson, A1C Brisson and A1C White. Appellant purchased some beer before leaving for the desert.

Appellant and his passengers drove to a desert location about 20 miles from George AFB. Appellant was the driver; Amn Myrick and A1C Isenhart were in the front seat; and A1C Anderson, A1C Brisson, and A1C White were in the back seat. Appellant and his passengers rode around in the desert for about 2 hours. During this time, appellant drank one beer. As they rode around in the desert, the Blazer developed "strange noises." They thought that the differential had been damaged. After checking the vehicle on two separate occasions, appellant decided to return to George AFB.

Appellant drove back to the base using paved roads. When he tried to negotiate a sharp curve that followed a long straightaway, the vehicle skidded, spun sideways, and rolled over four times. As a result, Amn Myrick was killed and appellant and his remaining passengers sustained various injuries.

A subsequent blood alcohol test showed that appellant's level was 0.16 ml. The skid mark analysis indicated that appellant's speed was about 72 MPH, while the posted speed limit at the curve was only 40 MPH.

Appellant was originally charged with four specifications of drunken and reckless driving resulting in injury to each surviving passenger. He was also charged with involuntary manslaughter in the death of Amn Myrick. The defense moved to dismiss the reckless-driving portion of each specification, which motion was granted. Multiplicity was not an issue raised during findings, and both counsel stated that they saw no multiplicity issue on sentencing.

---

Appellant was found guilty of the following specifications of drunken driving under Article 111:

SPECIFICATION 1: In that [appellant] did, in Southern California, on or about 6 May 1988, on Mariposa Road operate a vehicle, to wit: a passenger car, while drunk and did thereby cause the said vehicle to overturn and injure *A1C Lynn C. Brisson.*

SPECIFICATION 2: In that [appellant] did, in Southern California, on or about 6 May 1988, on Mariposa Road operate a vehicle, to wit: a passenger car, while drunk and did thereby cause the said vehicle to overturn and injure *A1C Patricia A. White.*

SPECIFICATION 3: In that [appellant] did, in Southern California, on or about 6 May 1988, on Mariposa Road operate a vehicle, to wit: a passenger car, while drunk and did thereby cause the said vehicle to overturn and injure *A1C Cheryl Isenhart.*

SPECIFICATION 4: In that [appellant] did, in Southern California, on or about 6 May 1988, on Mariposa Road operate a vehicle, to wit: a passenger car, while drunk and did thereby cause the said vehicle to overturn and injure *A1C Duane P. Anderson.*

(Emphasis added.)

The evidence of record shows that all four specifications resulted from a single incident of drunken driving and a single accident resulting therefrom. Our concern is whether it was plain error for the judge and the Court of Military Review to allow these four specifications to stand. *See generally United States v. Eckhoff,* 27 MJ 142 (CMA 1988); *cf. United States v. Jones,* 23 MJ 301, 303 (CMA 1987); *United States v. Fisher,* 21 MJ 327 (CMA 1986); *United States v. Webel,* 16 MJ 64 (CMA 1983).

The obvious question arising from these specifications is whether Congress intended for four separate convictions for drunken driving under Article 111 to be approved under the circumstances of the present case. *See United States v. Guerrero,* 28 MJ at 226; *United States v. Baker,* 14 MJ 361 (CMA 1983); *see generally Grady v. Corbin,* —— U.S. ——, 110 S.Ct. 2084, 2091 n.8, 109 L.Ed.2d 548 (1990). The Government says multiple convictions should be upheld because four different persons were injured as a result of appellant's drunk driving. *See generally United States v. Stepter,* 17 USCMA 549, 38 CMR 347 (CMA 1968); *United States v. Peterson,* 17 USCMA 548, 38 CMR 346 (1968); *United States v. Parker,* 17 USCMA 545, 38 CMR 343 (1968). We must reject the Government's "different-victims" rationale in determining the appropriate unit of prosecution for the military offense of drunken driving. *Cf. United States v. Brett,* 25 MJ 720 (ACMR 1987).[1]

▮ Our starting point in determining legislative intent is the language of the statute under which these convictions purportedly lie. *See Ladner v. United States,* 358 U.S. 169, 173, 79 S.Ct. 209, 211, 3 L.Ed.2d 199 (1958); *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955); *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952); *United States v. Guerrero, supra; United States v. Baker, supra* at 367 n.4. Article 111 now states:

§ 911. Art. 111. Drunken or reckless driving

*Any person subject to this chapter who operates any vehicle while drunk,* or in a reckless or wanton manner, or while impaired by a substance described in section 912a(b) of this title (article 112a(b)), *shall be punished as a court-martial may direct.*

(Emphasis added.) Pub.L. No. 99–570, tit. III, § 3055, 100 Stat. 3207–76 (1986). There is no mention whatsoever in this statute of physical injury, the number of victims, or even the occurrence of an accident resulting from the drunken operation of a motor vehicle. *See United States v. Grossman,* 2 USCMA 406, 410, 9 CMR 36, 40 (1953). Therefore, the unambiguous language of this statute defines the *actus reus* of this offense in a manner inconsistent with the Government's "different-victims" argument. *See People v. McFarland,* 47 Cal.3d 798, 254 Cal.Rptr. 331, 765 P.2d 493, 495 (1989); *Wilkoff v. Superior Court,* 38 Cal.3d 345, 211 Cal.Rptr. 742, 696 P.2d 134 (1985).

Resort to the legislative history of this provision also does not support the Government's position in this case. *See Ladner v. United States* and *Bell v. United States,* both *supra.* Article 111 was originally enacted in 1951, and its drafters provided the following comments:

Art. 111. Drunken or reckless driving.

---

1. The particular holding in that case was "that *the negligent homicide specification* is not multiplicious for findings with the *specification alleging drunken* and reckless *driving resulting in personal injuries* as each specification names a different victim." *United States v. Brett,* 25 MJ 720, 721 (ACMR 1987) (emphasis added). That is not the issue in appellant's case. *See generally People v. McFarland,* 47 Cal.3d 798, 254 Cal. Rptr. 331, 765 P.2d 493, 495 (1989).

"Any person subject to this code who operates any vehicle while drunk, or in a reckless or wanton manner, shall be punished as a court-martial may direct."

References.—Proposed A.G.N., articles 9(53), 9(54).

Commentary.—It is intended that the word "drunk" as used in this article, and in articles 112 and 113, shall have the same meaning as set forth in the M.C.M., paragraph 173, to wit: "Whether the drunkenness was caused by liquor or drugs is immaterial; and any intoxication which is sufficient sensibly to impair the rational and full exercise of the mental and physical faculties is drunkenness within the meaning of this article."

Hearings on H.R. 2498 Before a Subcomm. of the House Comm. on Armed Services, 81st Cong., 1st Sess. 1230 (1949). Again, there is no mention of injury, the number of victims, or even the occurrence of an accident resulting from the drunken driving. Moreover, there is not even a suggestion that the drafters considered physical injury to a particular victim, rather than the act of drunken driving, to be the appropriate unit of prosecution. *Cf. People v. McFarland* and *Wilkoff v. Superior Court,* both *supra.* Assuming some ambiguity could be fathomed in these circumstances, the rule of lenity approved by the Supreme Court still dictates the finding of a single offense. *See United States v. Guerrero,* 28 MJ at 227. *See generally Williams v. United States,* 458 U.S. 279, 290, 102 S.Ct. 3088, 3094, 73 L.Ed.2d 767 (1982).

Despite the above, our search for legislative intent is not concluded. Previous decisions from this Court have held that the above noted "rule of lenity" does not apply "to offenses long recognized at common law and by statute as entirely separate when involving different victims." *United States v. Parker,* 17 USCMA at 547, 38

CMR at 345, citing *Barringer v. United States,* 399 F.2d 557 (D.C.Cir.1968), *cert. denied,* 393 U.S. 1057, 89 S.Ct. 697, 21 L.Ed.2d 698 (1969). In *Barringer,* the Court said, "Elsewhere the Supreme Court has clearly indicated that where the principal legislative purpose is the ·protection of individual victims, the rule of lenity does not obtain." 399 F.2d at 558.

Those cases, however, involved robbery, assault, or murder—criminal offenses for which protection of the individual person as victim was the well-established object. *See United States v. Stepter* and *United States v. Peterson,* both *supra.* Technically speaking, drunken driving or "[d]riving under the influence is a victimless crime which aims to keep our roads and highways clear of the risks and dangers posed by intoxicated drivers." *Commonwealth v. McCane,* 517 Pa. 489, 539 A.2d 340, 345 (1988); *see Commonwealth v. Johnson,* 376 Pa.Super. 121, 545 A.2d 349, 354 (1988). *See generally* Annotation, 42 A.L.R. 1498 (1926).[2] Moreover, we have been unable to discover any longstanding practice which sanctions a separate conviction for unaggravated drunken driving, as delineated in Article 111, on the basis of each victim injured. *Cf.* R. Erwin, M. Minzer, L. Greenberg, H. Goldstein, A. Bergh, *Defense of Drunk Driving Cases,* Criminal–Civil § 1.07 (1989). *See generally Wilkoff v. Superior Court,* 696 P. 2d at 138.

Admittedly, the President, pursuant to his sentencing power under Article 56, UCMJ, 10 USC § 856, has provided for increased punishment for drunken driving resulting in personal injury. Para. 35e(1), Part IV, Manual for Courts–Martial, United States, 1984 (Change 3), states:

b. *Elements.*

(1) That the accused was operating a vehicle; and

---

**2.** This is not to say that drunk driving is not a serious offense or that its prohibition may not ultimately protect the lives of individual persons. *See generally Michigan Department of State Police v. Sitz,* —— U.S. ——, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). Nevertheless, what must be recognized is that other statutes are particularly designed to directly protect against drunk driving resulting in injury, but they were not utilized in this case by the prosecution. *E.g., People v. McFarland, supra.*

(2) That the accused was drunk while operating the vehicle, that the accused operated the vehicle in a reckless or wanton manner, or that the accused was impaired by a substance described in Article 112a(b) while operating the vehicle.

[Note: If injury resulted add the following element]

(3) That the accused thereby caused the vehicle to injure a person.

\*    \*    \*    \*    \*    \*

e. *Maximum punishment.*

(1) *Resulting in personal injury.* Dishonorable discharge, forfeiture of all pay and allowances, and confinement for 18 months.

(2) *No personal injury involved.* Bad-conduct discharge, forfeiture of all pay and allowances, and confinement for 6 months.

This punishment enhancer was explained by the 1984 Manual drafters as follows:

35. Article 111—Drunken or reckless driving

b. *Elements.* The aggravating element of injury is listed as suggested by sample specification number 75 and the Table of Maximum Punishments at 25–13 and A6–13 of MCM, 1969 (Rev.). The wording leaves it possible to plead and prove that the *accused* was injured as a result of the accused's drunken driving and so make available the higher maximum punishment. This result recognizes the interest of society in the accused's resulting unavailability or impairment for duty and the costs of medical treatment. Paragraph 190 [Proof, (c) ] of MCM, 1969 (Rev.) used "victim," the ambiguity of which might have implied that injury to the accused would not aggravate the maximum punishment. *Analysis of Contents, Manual for Courts–Martial, United States, 1969 (Revised Edition)* DA PAM 27–2, at 28–10, does not suggest that the drafters intended such a result.

1984 Manual, *supra* at A21–93 to A21–94 (Change 3).

The drafters of the 1969 Manual similarly opined:

In the *Proof*, "(c) that the accused thereby caused the vehicle to injure the victim, as alleged," is new. This was added because alleging and proving an [in]jury as a matter of aggravation authorizes an increase[d] maximum punishment. *See United States v. Grossman*, 2 USCMA 406, 9 CMR 36 (1953).

*Analysis of Contents, Manual for Courts–Martial, United States 1969, Revised Edition* at 28–10. However, Manual provisions do not determine the proper prosecutorial unit for a congressional statute. *United States v. Baker*, 14 MJ at 367; *see generally Liparota v. United States*, 471 U.S. 419, 424, 105 S.Ct. 2084, 2087, 85 L.Ed.2d 434 (1985); *Ellis v. Jacob*, 26 MJ 90, 92–93 (CMA 1988); *United States v. Ware*, 1 MJ 282 (CMA 1976).

Finally, even these Manual provisions do not clearly suggest that the President's concern was with the number of victims injured rather than the fact of personal injury in general. Paragraph 35 only makes the distinction between resulting personal injury and no personal injury, and it makes no mention of the number of victims. *See United States v. Lingenfelter*, 30 MJ 302 (CMA 1990). In this context, jurisdictions disagree as to whether the unit of prosecution should be measured by each victim suffering injury from the accused's drunken driving. *See Wilkoff v. Superior Court, supra; cf. Galvan v. State*, 98 Nev. 550, 655 P.2d 155 (1982); *Dupin v. State*, 524 N.E.2d 329 (Ind.App. 4 Dist.1988). The absence of particular statutory language suggesting a principal concern for each person injured by the drunken driving is critical. *See also People v. McFarland*, 254 Cal.Rptr. at 333, 765 P.2d at 495; *State v. Dunlop*, 721 P.2d 604 (Alaska 1986); *Pulaski v. State*, 540 So.2d 193, 194 (Fla.App. 2 Dist.1989).

In summary, Article 111 plainly permits only a single offense of drunken driving under the circumstances of this case. *Cf. Wilkoff v. Superior Court, supra* 211 Cal. Rptr. at 744 n. 4, 696 P.2d at 137 n. 4. In

addition, we note that both the military judge and the Court of Military Review treated these offenses as separate for purposes of punishment. *Cf. United States v. Guerrero, supra* at 227 n.2. Accordingly, a consolidation of the specifications and reassessment of the sentence are required.

### DECISION

Specifications 1 through 4 of Charge I are consolidated as the specification of Charge I as follows:

Specification: In that Sergeant William W. Scranton, United States Air Force, 37th Aircraft Generation Squadron, did, in Southern California, on or about 6 May 1988, on Mariposa Road operate a vehicle, to wit: a passenger car, while drunk and did thereby cause the said vehicle to overturn and injure A1C Lynn C. Brisson, A1C Patricia A. White, A1C Cheryl Isenhart, and A1C Duane P. Anderson.

The decision of the United States Air Force Court of Military Review as to Charge I and its consolidated specification, and Charge II and its specification is affirmed. The decision below as to sentence is reversed. The record of trial is returned to the Judge Advocate General of the Air Force for submission to that court for reassessment of the sentence.

Chief Judge EVERETT and Judge COX concur.