UNITED STATES

v.

**Luis A. MARTINEZMALDONADO, Lance Corporal (E–3), U.S. Marine Corps.**

NMCCA 200500070.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 7 May 2004.

Decided 13 March 2006.

Lt Brian L. Mizer, JAGC, USNR, Appellate Defense Counsel.

Maj Kevin C. Harris, USMC, Appellate Government Counsel.

Before CARVER, Senior Judge, VOLLENWEIDER and GEISER, Appellate Military Judges.

GEISER, Judge:

A military judge sitting as a special court-martial convicted the appellant, in accordance with his pleas, of disobeying a lawful general order, damaging personal property of a value less than $500.00, wrongfully appropriating an automobile, and larceny. The appellant's conduct violated Articles 92, 109, and 121, Uniform Code of Military Justice, 10 U.S.C. § 892, 909, and 921. The appellant was sentenced to a bad-conduct discharge, confinement for four months, forfeiture of $750.00 pay per month for a period of four months, and reduction to pay grade E–1. The convening authority approved the sentence as adjudged.

The appellant raises three assignments of error. First, he asserts that the military judge erred when he failed to dismiss Specification 2 of Charge III (larceny of a digital camera) as an unreasonable multiplication of charges with Specification 1 of Charge III (wrongful appropriation of the vehicle containing the digital camera). Second, the appellant argues that his pleas to Charge II and the specification thereunder (damaging a compact disc (CD) player) were improvident. Finally, he avers that his guilty plea to Specification 2 of Charge III was improvident. The appellant requests that this court set aside the relevant findings and sentence and order a rehearing as to the sentence on the remaining charges.

We have examined the record of trial, the assignments of error, and the Government's response. We conclude that the appellant's pleas of guilty to Charge II and its specification were improvident. Following corrective action, we conclude that the findings and the sentence are correct in law and fact and that no error remains that is materially prejudicial to the substantial rights of the appellant. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

**Background**

The appellant's responses during the providence inquiry indicate that during the evening and early morning hours of 3–4 April 2004, he and a fellow Marine, Lance Corporal (LCpl) Garcia, were drinking off base in Okinawa, Japan. At approximately 0300, they had missed their bus back to base and were trying to figure out how they were going to get back. As they walked down a local street, the appellant claims he saw a man trying to steal the CD player out of a parked car. The man fled when he noticed the appellant and his friend approaching. The appellant observed that the car had been left running with the keys in the ignition. The two Marines spontaneously decided to use the car to return to base. The appellant claimed that his intent was to make an anonymous call the following day to let the owner know where the car was parked.

The appellant and LCpl Garcia got in the car but were having difficulty driving because the partially removed CD player was hanging down and obstructing smooth operation of the gearshift. The appellant indicated that the CD player was hanging by three wires, which he disconnected from the dashboard. He placed the CD player in the back seat and drove off toward the base. In the meantime, LCpl Garcia was rummaging around in the back seat. LCpl Garcia found a digital camera and told the appellant that he liked it and was thinking about stealing it. The appellant responded by saying that he "didn't mind." Record at 33. An hour later, the two Marines were apprehended by Japanese police at a roadblock. They were trans-

ported to a Japanese police station where LCpl Garcia turned in the stolen camera.

## Unreasonable Multiplication of Charges

The appellant contends that the finding of guilty to Specification 1 of Charge III (wrongful appropriation of a vehicle) and the finding of guilty to Specification 2 of Charge III (larceny of a digital camera within that vehicle) constitute an unreasonable multiplication of charges. Appellant's Brief of 22 Apr 2005 at 3–5. We disagree.

■ Unreasonable multiplication of charges is a separate and distinct concept from multiplicity. *See United States v. Quiroz,* 55 M.J. 334, 337 (C.A.A.F.2001). While multiplicity is based on the constitutional and statutory prohibitions against double jeopardy, the doctrine of unreasonable multiplication of charges stems from "those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion." *Id.*

■ This court applies five factors in evaluating a claim of unreasonable multiplication of charges:

1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?

2) Is each charge and specification aimed at distinctly separate criminal acts?

3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?

4) Does the number of charges and specifications unreasonably increase the appellant's punitive exposure?

5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*See United States v. Quiroz,* 57 M.J. 583, 585–86 (N.M.Ct.Crim.App.2002)(en banc), *aff'd,* 58 M.J. 183 (C.A.A.F.2003)(summary disposition); *accord Quiroz,* 55 M.J. at 339 ("this approach is well within the discretion of [the court of criminal appeals] to deter-

mine how it will exercise its Article 66(c) powers."). Applying these criteria to the instant case, we note that the appellant did not raise this issue at trial. This significantly weakens his argument. *See generally United States v. Butcher,* 56 M.J. 87, 93 (C.A.A.F.2001).

■ With regard to the second factor, we find that the specifications in question were aimed at distinctly separate criminal acts. We recognize that the MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.), Part IV, ¶ 46c(1)(h)(ii) incorporates a policy determination by the President that the larceny of multiple items at the same time and place be charged as a single theft.[1] As detailed below, in three unpublished opinions, this court addressed various combinations of larceny and wrongful appropriation in the context of this policy. In *United States v. Benavides,* No. 9901675, 2000 WL 1775228, 2000 CCA LEXIS 252, unpublished op. (N.M.Ct.Crim. App. 12 Oct 2000), this court applied the logic of this policy to encompass the related offense of *wrongful appropriation* of multiple items at the same time and place but belonging to different victims.

In *United States v. Spencer,* No. 200000417, 2001 WL 314551, 2001 CCA LEXIS 72, unpublished op. (N.M.Ct.Crim.App. 19 Mar 2001), this court considered whether the policy reflected in MCM, Part IV, ¶ 46c(1)(h)(ii) should be further extended to include a combination of larceny and wrongful appropriation committed at the same time and place.[2] The court first observed that Article 121, UCMJ, makes criminal both larceny and wrongful appropriation but distinguishes them as separate offenses. Larceny, requiring intent to permanently deprive the property owner of the use and benefit of his property, is punished more severely than wrongful appropriation, which reflects a less harmful intent merely to temporarily deprive the owner of the use and benefit of his property. The court also considered that no

---

[1]. This court recognized and applied this policy in *United States v. Lepresti,* 52 M.J. 644, 653 (N.M.Ct.Crim.App.1999).

[2]. The accused (Spencer) entered a barracks room shared by a friend and an unknown room-

mate. The court found that the accused's intent was to take property belonging to both room-mates but to return the property of his friend at a later date. He intended to permanently keep the property belonging to his friend's roommate.

policy similar to MCM, Part IV, ¶ 46c(1)(h)(ii) exists with respect to offenses other than multiple larcenies.[3]

The court in *Spencer* opined that the express policy limitation concerning multiple contemporaneous larcenies is most understandable in the traditional suitcase analogy where a thief steals a single suitcase not knowing that it contains property belonging to several individuals. This is substantially reflected in the facts of *Benavides*, where the accused did not realize a checkbook and wallet were in a car he had wrongfully appropriated. The court in *Spencer* was not persuaded, however, that the policy reflected in MCM, Part IV, ¶ 46c(1)(h)(ii) was intended to apply to a situation where an accused consciously decided to contemporaneously victimize two individuals in different ways.

The court also found persuasive support in *United States v. Casarez*, No. 9801429, 1999 WL 148493, 1999 CCA LEXIS 43, unpublished op. (N.M.Ct.Crim.App. 26 Feb 1999), in which the accused, rightfully in possession of an ATM card belonging to another, wrongfully appropriated[4] the card in order to steal currency from the card owner's bank account. In *Casarez*, the court was persuaded that the accused committed two distinct offenses that were not substantially one transaction.

In the instant case, the appellant and LCpl Garcia wrongfully appropriated a vehicle in order to return to the base. The appellant specifically intended to leave the vehicle near the base and to call the owner and disclose the location the following day. After appropriating the car, LCpl Garcia found and decided to steal a digital camera he found in the back seat of the car. The appellant facilitated the theft by interposing no objection and by transporting LCpl Garcia and the stolen property away from the scene of the crime. Unrelated to their initial decision to wrongfully appropriate the car, this was a separate decision potentially resulting in a greater loss to the vehicle's owner. The first crime was a temporary loss of the car. The second crime would have resulted in the permanent loss of the camera. But for the second crime, the victim would have gotten back both the car and the camera.

Consistent with *Spencer* and *Casarez*, we are not convinced that the policy reflected in MCM, Part IV, ¶ 46c(1)(h)(ii), applies to the situation at bar or that charging the wrongful appropriation of a vehicle separately from the larceny, some minutes later, of a digital camera from the back of the vehicle in any way misrepresents or exaggerates the appellant's criminality or unreasonably increases the appellant's punitive exposure. The initial decision of the two Marines called for them to temporarily take a car belonging to someone else in order to get back to the base. Sometime later, LCpl Garcia discovered the digital camera and stole it. The appellant facilitated this. The larceny was an act separate and apart from the decision to wrongfully appropriate the car for the sole purpose of transportation. Finally, there is no evidence of prosecutorial overreaching or abuse. We, therefore, hold that the specifications under Charge III do not constitute an unreasonable multiplication of charges.

### Improvident Plea to Charge II

The appellant contends that there was no evidence that he willfully destroyed or damaged the CD player as alleged in the specification under Charge II. Although he did not object at trial, the appellant claims on appeal that disconnecting an already-damaged and inoperable CD player from its power source for the stated purpose of moving it out of the way does not provide a factual basis to determine that the appellant willfully damaged the CD player. We agree.

---

3. The court noted by way of example that the killing of two persons substantially contemporaneously without justification or excuse is potentially two murders, citing *United States v. Curtis*, 52 M.J. 166 (C.A.A.F.1999); the striking of two persons substantially contemporaneously could be two assaults, citing *United States v. Peterson*, 38 C.M.R. 346, 1968 WL 5415 (C.M.A.1968); and that contemporaneously taking property from two persons at gunpoint would be considered two robberies, citing *United States v. Parker*, 38 C.M.R. 343, 1968 WL 5414 (C.M.A.1968).

4. The court held that withdrawing funds in excess of authority granted constituted wrongful appropriation. *See United States v. Willard*, 48 M.J. 147 (C.A.A.F.1998).

In order to reject a guilty plea on appellate review, the record must show a substantial basis in law and fact for questioning the plea. *United States v. Irvin*, 60 M.J. 23, 24 (C.A.A.F.2004)(citing *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F.2002)). To constitute an offense under Article 109, UCMJ, the damage inflicted must be willful, that is, intentional. MCM, Part IV, ¶ 33c(2). Even if the act causing the damage was intentional, such an act does not establish, on its own, that the appellant intended to damage the property. *United States v. White*, 61 M.J. 521, 523 (N.M.Ct.Crim.App.2005), *rev. granted*, 61 M.J. 521 (C.A.A.F.2005).

In the instant case, the appellant testified that he disconnected the three wires connecting the CD player to the dashboard without breaking them. Record at 28. He further stated that his intent in removing the three wires was to get the CD player out of the way in order to have unfettered access to the gearshift. He denied any intent to damage the CD player. *Id.* at 30. The appellant also testified that the CD player was already damaged and non-functional when he disconnected it. *Id.* While the appellant ultimately agreed with the military judge that he "did further damage to the CD player" by disconnecting it, he never wavered in his assertion that his intent in removing the wires was to get the CD player out of his way, not to damage it or to render it inoperable. *Id.* In fact, it seems clear that the appellant did not at the time perceive his actions as having any affect whatsoever on the already inoperable CD player.[5]

In view of the uncontroverted statements of the appellant, and considering the holding in *White*, we find that the appellant's plea to Charge II was improvident in that the record contains no evidence that the appellant specifically intended to damage the CD player or to render it inoperable when he discon-nected it from the dashboard. We further find that, notwithstanding the appellant's lack of specific intent to damage the CD player, his action in disconnecting an already damaged and nonfunctional CD player from the dashboard did not further damage it or render it substantially more inoperable than he already perceived it to be. We find no evidence that the appellant willfully damaged the CD player as alleged in Charge II. We, therefore, find a substantial basis in law and fact to question the appellant's plea of guilty to Charge II. We will take appropriate action in our decretal paragraph.

### Improvident Plea to Specification 2 of Charge III

The appellant finally asserts that his statements during the providence inquiry contained no evidence that he stole the digital camera as alleged in Specification 2 of Charge III. Specifically, the appellant claims that he cannot be held responsible for a conspiracy that was not charged and did not exist. Further, he asserts that he did nothing to aid or abet LCpl Garcia's theft of the camera. Appellant's Brief at 9.

It is uncontested that LCpl Garcia, not the appellant, physically stole the camera charged in Specification 2 of Charge III. The appellant and the Government agree that any criminal liability on the part of the appellant for the theft must arise from the law of principals and/or the joint liability rules among co-conspirators. *See* Arts. 77 and 81, UCMJ, 10 U.S.C. § 877 and 10 U.S.C. § 881; MCM ¶ 5c (5). We concur.

By his own admissions, the appellant actively facilitated the theft by driving LCpl Garcia and the stolen camera away from the scene of the crime, substantially increasing LCpl Garcia's probability of success. The appellant was, therefore, guilty as a principal

---

5. See *United States v. Johnson*, 24 M.J. 101, 105 (C.M.A.1987), in which the court held that a similar intent requirement embodied in a sabotage statute would be satisfied either through a specific intent to damage the item or if the accused "acted when he knew that injury to the national defense would be the almost inevitable result, even though the reason for his action had nothing to do with national defense." Similarly, in *United States v. Ortiz*, 24 M.J. 164, 168 (C.M.A. 1987), the Government proved the intent requirement in a sabotage statute by showing the accused purposefully disconnected a relay with the expectation that the indicator light would reveal a malfunction and the aircraft then would be grounded for inspection. As in *Johnson*, intent to damage was held to broadly include intent to render an item or system temporarily nonfunctional without causing permanent damage.

under an aider and abettor theory. Art. 77, UCMJ, 10 U.S.C. § 877. We find no substantial basis in law or fact to question the appellant's plea of guilty to Specification 2 of Charge III.

### Conclusion

The findings of guilty to Charge II and the specification thereunder are set aside and dismissed. The remaining findings are affirmed. Having reassessed the sentence in accordance with the principles set forth in *United States v. Cook*, 48 M.J. 434, 438 (C.A.A.F.1998), we conclude that the sentence is appropriate for the remaining offenses. Accordingly, we affirm the sentence as approved by the convening authority.

Senior Judge CARVER and Judge VOLLENWEIDER concur.